3, 12, 0, 7, 4, 1. People of the State of Illinois. Appellee by Thomas Aredo v. Roderick Tademy. Appellant by Daniel Bauer. Just before we proceed, there was, yesterday I believe we received, it was filed last Thursday, a motion to cite additional authority that was filed by the appellant. And I don't know, Mr. Arado, if you had any response or if you needed some time or what? This morning, our deputy director handed it to me, so I, other than looking at it this morning, I thought that was really a chance to consider it. So if I could have some time to file a written response. I'll give it a week. Seven days. Seven days. Thank you. And of course, you'll have an opportunity to take a look at that. If you'd like to proceed, Mr. Malan. Thank you very much. May it please the court, counsel. My name is Daniel Malan. I'm with the State Appellate Defender's Office, and I represent the Appellant Roderick Tademy. I intend to limit my argument today to the second and third issues raised in the briefs. These were the Confrontation Clause issues and the 431B issues. I'd, of course, be happy to answer any questions on the other arguments we raised. And I would actually like to start with the third issue, the Rule 431B issue, because the state, in fact, admits error. The state agrees that the trial court failed to comply with Rule 431B, where the trial judge did not inform the jurors that Tademy's decision not to testify cannot be held against him. Therefore, the only question in that argument is whether the evidence in this case is closely balanced, because if this court decides that it is closely balanced, Tademy is entitled to a new trial. Now, the only issue here at trial was whether or not Tademy failed to appreciate the criminality of his conduct when he shot his son. There was substantial evidence presented to the jury on both sides of this issue. Everyone agreed at trial that Tademy had mental issues. This included the state's expert doctor. Tademy's wife, who was a witness for the state, testified about Tademy's history of mental illness, hallucinations, and delusions. She testified that his mental health had been deteriorating in the years leading up to the shooting. She testified that Tademy saw wolf men and vampires in his house and yard. She told the doctors that he had reported being scratched by the devil. So there was really no dispute that Tademy had serious mental issues and that he was delusional. The defense presented their expert doctor, who testified that Tademy suffered from paranoid schizophrenia. It was the defense's doctor's opinion that Tademy was indeed legally insane at the time of the shooting. The defense doctor, Dr. Frumkin, testified that his mental condition caused him to be detached from reality, and it was that detachment from reality that is why he could not appreciate the criminality of his conduct. And the state, of course, presented the testimony of Dr. Zook, their expert psychiatrist, who agreed that Tademy had some mental issues and suffered from delusions, including the delusion that Tademy shot his son because he believed his son was sexually molesting his sister, Tademy's daughter. The only disagreement was as to the nature and severity of Dr. Tademy's mental illness. The state disagreed about whether or not he would suffer from schizophrenia and disagreed about whether or not he appreciated the criminality of his conduct. The evidence in this case, therefore, just basically boiled down to a battle of experts. It was an even number of experts on each side of the insanity issue. So if the evidence isn't close in this case, it's really hard to imagine any case where the evidence is actually closely balanced. Again, there was lay testimony concerning from his wife that he was mentally ill and suffered from delusions. One expert on each side of the issue of whether or not he appreciated the criminality of his conduct. Is the diagnosis or determination, is it a mental disease or defect? Is it something that requires a diagnosis in order for there to be a finding of insanity for legal purposes? Not necessarily. I wouldn't say so. I think the only question is whether or not someone appreciates the criminality of their conduct. The exact diagnosis, the exact opinion of what Roderick Kennedy suffered from, I don't think is determinative of whether or not he was legally insane. I think the question comes down to whether or not he appreciated the criminality of his conduct. Of course, we had Dr. Frumkin, the state's doctor, saying he could not and the state's doctor saying he could. In our briefs, we provided several decisions where appellate courts have considered similar factual scenarios when you have an even number of experts on each side of the insanity issue. One for the state, one for the defense, two for the state, two for the defense. There's agreement about whether or not a defendant has a mental disease. The only disagreement is whether or not it's severe enough to deprive a defendant of the ability to appreciate their conduct. In all these cases, reviewing courts will find that the evidence is closely balanced. I think that's exactly what we have here. Does it matter about how much lay testimony there is at all or how that stacks up or how the jury perceives it? It should certainly factor in. Here, I think it is important because the lay testimony is yes, he was suffering from these hallucinations and delusions and his mental state was deteriorating in the three and a half years leading up to this incident. Perhaps on the other hand, if there was lay testimony saying, well no, I've never seen any sort of mental illness with him, this is the first time this has ever come up, that could factor in to whether or not it's closely balanced. But the lay testimony here actually supports the argument that the evidence was closely balanced. Same thing happened in all the cases cited in the briefs, where there was lay testimony from friends or families that a certain defendant suffers from serious mental disorder and then you have an expert split down the middle on each side on whether or not ultimately a defendant can appreciate the criminality of his conduct. And that's the only issue, isn't it? Yes, that's the only issue. Because the other is the existence or non-existence of mental illness. I mean, lay or... Yes, correct. You would think, I would, I mean I'm not an expert of course, but when it comes down to can someone appreciate whether or not you're shooting your son is wrong, whether or not you suffer from a serious mental disease has to shed light on that question. So that's what we have here. So again, the state conceded that there was Rule 431B error. And the only issue, therefore, is whether or not the evidence is closely balanced. We submit that because, I mean, the case boils down to a battle of experts, it's just inherently close. So it's not with your law and your structural law? No. Okay. So if the court has no further questions on that... Why is that? You've already decided on that issue? Yeah, Illinois Supreme Court has decided on that issue. Really? Yeah. No one agrees with that. They're prerogative. Well, the Illinois Supreme Court, as Thompson, I believe, said it's not structural error, the Rule 431B error. But nonetheless, the evidence was certainly closely balanced in this case, so it's reviewable as plain error. Now, if the court has no further questions, I would like to get into the Confrontation Clause issue a little bit. So it's during the examination of both doctors, the state elicited a testimony from the expert psychiatrist, both the defense and the state, that when Tadamy went to the jail just days after this incident, he was examined by a psychiatrist just days after the shooting, and the jail psychiatrist diagnosed Tadamy with an adjustment disorder with depressed mood. After the close of the evidence in its rebuttal closing argument, the state, at its last chance to address the jury, argued that Tadamy was not insane because, and I quote, most importantly, when he went to the jail right after this happened, psychiatrists evaluated him and they found nothing wrong with him. So therefore, a reading of the record establishes that the jail psychiatrist's diagnosis was used for its truth. That is, to prove that Tadamy did not suffer from paranoid schizophrenia and was able to appreciate the criminality of what he did.  This was not just basis evidence offered to explain the doctor's own opinions. The jury was never instructed that they couldn't consider the evidence for its truth, and they must have considered the evidence for its truth because the state itself argued that that was one of the most important pieces of evidence in this case. The state made sure to place this diagnosis before the jury during its examination of both doctors. Again, it emphasized its importance in rebuttal. It was therefore used as a substantive piece of evidence that was used for its truth. Is the biggest problem that you have is the way they used it in closing, or is it the way they referred to it in their examination of Dr. Zoot? Well, it came in through Dr. Zoot. I'm sorry, the biggest problem I have? Right. I mean, it... Well, the biggest problem I think is that it came in at all because it was used for its truth, and I think proof that it was used for its truth was the way the state referred to it in its closing argument. They didn't refer to... If the state had perhaps argued that, well, we know that the state's doctor is credible because he relied on the jail psychiatrist's opinion, and therefore the state's doctor can be believed more so than the defense doctor, maybe there would be an argument that it wasn't used for its truth.  They said one of the most important things to determine whether or not Tadamy could appreciate what he did was wrong was the fact that just days after the incident, he went to the jail psychiatrist who said, there's nothing wrong with it. So this wasn't just basis evidence. I think the rebuttal closing argument only emphasizes the fact that it was brought into the jury for them to consider it for its truth. We cited a Michigan Supreme Court decision. I know it's not binding on this court, but it's nearly identical facts. It was the same thing, battle of experts, lay testimony concerning whether or not the defendant was insane. The Michigan Supreme Court considered this case, and yes, they said there's no way this didn't come in for its truth. The same thing, the diagnosis was brought out during the examination of both doctors, and in that case, same thing, during the rebuttal closing argument, the prosecutor emphasized the importance of the diagnosis in determining whether or not the defendant was insane. We would ask this court to find the same thing here. Furthermore, the second part of the analysis is whether or not this diagnosis was testimonial. Admittedly, the law in this area is very fractured. Even in our Supreme Court, the Illinois Supreme Court, as well as the United States Supreme Court, there's a lot of mixed opinions about what makes a statement testimonial. But this court in People v. Cleary just last year, it's the most recent Confrontation Clause decision. This court clarified that the proper framework used here for determining whether or not a statement is testimonial is the framework that was set forth in the Illinois Supreme Court decision, People v. Stackley. The framework has two parts. First, a statement has to be made in a solemn fashion. Second, a testimonial statement must be intended to establish a particular fact. So the diagnosis here meets both prongs. As to the first prong, one of the indicia of solemnity is whether there are severe consequences that could discourage dishonesty. Here, the jail psychiatrist was bound by the medical code of ethics. That code of ethics mandates honesty. The jail psychiatrist therefore risked losing her medical license, and therefore her livelihood, by offering a dishonest opinion. That's only on top of the fact that if there were severe consequences concerning housing a county prisoner under the false belief that he was not mentally ill, that would pose a risk to the entire facility. So I don't think there's really any question that there were severe consequences for dishonesty, and so this was an honest opinion made in a formal setting, nonetheless. I mean, Tadamy had already been arrested. He's taken to the county jail. He's being seen by this jail psychiatrist only because of the bizarre nature of the offense and the charges. This isn't just a passing commentary on his mental health. She was making a concrete evaluation of him, and it was to be used for purposes of housing him in the facility. Regarding the second prong, which is whether the statement was to establish a particular fact, the question here is whether or not objective circumstances would have led a reasonable psychiatrist in the jail psychiatrist's position to conclude that her diagnosis could be used against the defendant. So what would an objective psychiatrist in the psychiatrist's position believe? Would a reasonable psychiatrist expect that this diagnosis is going to be used against Tadamy? And I think the answer again here is clearly yes. Again, the psychiatrist was examining the defendant just days after he was arrested for shooting his own son in the head under the delusional belief that the son was molesting one of the other daughters, and no reasonable psychiatrist could assume that her diagnosis would not be used against her in this case. It was entirely foreseeable that fitness insanity issues would arise, as they did, and it's completely predictable that the jail psychiatrist's diagnosis would be used against Tadamy, as it was. Therefore, the jail psychiatrist's diagnosis was testimonial and implicated his confrontational rights. Again, I would point to the Michigan Supreme Court's decision in Fackleman. They directly addressed these points, and they actually followed the same exact test that this court uses or adopted from Steadley, where the first question is solemnity, and the second question is whether or not an objective psychiatrist would have believed or foreseen that the diagnosis would be used against the defendant, and they found, the Michigan Supreme Court, found that, yes, indeed, yes, it was testimonial. Okay, thank you. So we concede that this error was also unpreserved, and we would ask you to reverse this under either prong of the plain error, and that's actually what our motion to set additional authority was most recently. The First District just reaffirmed that. You're not supposed to argue. Oh, my apologies. Yeah. Okay. Okay. Well, in the brief, we argued that we did cite case law establishing that this error is reversible under both prongs of the plain error doctrine. We just established that it was closely balanced, so it's reversible there. Regardless of the closeness of the evidence, it also implicates his substantial rights, and so it's reversible under the second prong of the plain error doctrine as well. And the state actually did not dispute in their brief that this was reversible under the second prong of the plain error. So we would ask, therefore, this court to reverse. Well, we would ask, first, under the first issue, to reverse this case and send it back to the trial court for an entry of a verdict of guilty or not guilty by reason of insanity. And then pursuant to these two issues, we'd ask you to reverse and would ask for an order stating that the jail psychiatrist's diagnosis could not be introduced at any new trial. So if this court has no questions. Any other questions? Thank you, Mr. Maddow. Thank you. Mr. Araujo. Mr. Maddow. Good morning, Your Honors. Good morning. Counsel. I thank the court. Thomas Raab on behalf of the people. I guess we'll take it in the order in which it was presented. 431B obviously was error. The judge did not ask the jury about the problem with the defendant not testifying. So the question is, was it closely balanced? And our position is that it was not closely balanced. And the primary reason for that is not simply looking at there's one expert and here's another expert, but you're looking at the quality of the evidence presented, not the quantity of the evidence presented. Wouldn't that almost operate against the state because of the level of examination that the defense expert took as opposed to the level of the examination by Dr. Kuhn? No, Your Honor. And the reason is that the problem that we addressed primarily in the first issue is that Dr. Frumkin never connected defendant's insanity to the action of shooting his son. He said, hey, yeah, he has this schizophrenic disorder. Therefore, he couldn't appreciate what he had to break with reality. Okay, well, where's the connection? Dr. Frumkin said, oh, he knew he was pulling the trigger. He knew he was shooting his son. Well, how does that show that he didn't appreciate the criminality of his conduct? And that's the question that has to be addressed to the jury. And that's why it's not closely balanced because Dr. Frumkin never said he could not appreciate his mental illness caused him to not appreciate the criminality of his conduct. Dr. Zoot, however, diagnosed and said that, yes, he could appreciate the criminality of his conduct. And even Antoine Tatamy's testimony was that he appeared to understand. I mean, he was trying to shoot her. When the gun didn't work, he was trying to hit her with it. Now, that shows a conscious regard of what he was doing, what his conduct was. There's nothing to indicate from any of the testimony from the experts presented by the defendant or even the other lay testimony that the defendant, at the time that he shot his son, did not appreciate the criminality of his conduct. And to address your one question, Justice Breyer, yes, there has to be a diagnosis. There has to be some confirmation that the defendant has a mental disease or defect. You cannot simply say, get lay witnesses to come and say, well, he was acting weird, and therefore he should get a, you know, the statute simply says mental disease or defect. So you have to establish that. I believe the only way you can do that to a scientific degree is to have an expert. So that addresses the close to the balance. As far as the second argument, confrontation clause, the L.A. Supreme Court and the U.S. Supreme Court have addressed that in the context of expert witnesses. The Cleary, this Court's decision in Cleary and the Statutory Court does not do that in the context of expert witnesses. So I think those two cases are, the line of cases are distinguishable. In fact, in Cleary, this Court acknowledged that the Leach Court, the L.A. Supreme Court and the Leach did not address the SECLE framework, and I believe, I assert that the reason for that is they didn't involve, that case did not involve expert witnesses. So the question is, how do you determine what is it that an expert witness can rely upon when they're giving an opinion? And it is any evidence that is reasonable for an expert to rely upon and under the rules of evidence doesn't necessarily have to be admissible at the trial. So the question then is, what about this jail evaluation or diagnosis, if you will? We are asserting that it's more akin to an autopsy report than Leach. There is no indication that when he went into jail that this was done for the purpose of determining at the time he shot his son that he was insane. It was done only for the purpose, as counsel stated, for the purpose of housing in the facility. They didn't care, they didn't address whether he was insane at the time. Therefore, when you look at Leach, they found, the Illinois Supreme Court found that the autopsy report was not testimonial because it did not link the defendant to the crime. The medical examiner was required to provide this report and the report was not prepared for the sole purpose of litigation. In this case, the defendant, the jail evaluation wasn't done for the, certainly not for the last one, wasn't performed for the purpose of presenting, preserving his treatment in the housing of the facility. And the reason why Dr. Zook testified that the reason why that evaluation is done is because any time a defendant is under the circumstances of emotional crime, such as in this case, he shot his son, or involves any family member, they do an evaluation just for the purpose of making sure that they're not suicidal or they're not going to have some psychological harm in the facility. It has nothing to do with presenting it at the time of the trial. So then the prosecutor argues in closing argument that he's evaluated by the jail psychiatrist and they find nothing wrong with him. I mean, is that proper for him to even make that reference or inference since that's not what the jail psychiatrist was there to do? I mean, is that a problem? Well, is it a problem? It's not a problem from the perspective of is this a confrontation clause issue, you know. Was this a problem with the judge, with the jury even hearing this evidence? And I'd say no. Second argument, of course, is argument is not evidence, you know. Jury is instructed and was instructed in this case disregarding anything that does not conform with the instructions that I give you. Therefore, it would not, you know. Even then, we would assert that, you know, it's not harmful, it's not prejudicial, I guess, in this case because it wasn't preserved. Because the evidence wasn't closely balanced. So even if you bring that up as, I'm not even sure it's relevant to the analysis of whether at the time the witnesses were being interviewed or questioned about this, did that make it a confrontation clause problem? Did defense counsel file a motion to eliminate with regard to that? No. I don't believe there was any objection and no motion to eliminate that I recall regarding the use of the jail records. In fact, Was there an objection during closing argument? I don't recall there being an objection. Is there a closing argument issue raised on appeal? No. Ineffective assistance of counsel raised on appeal? Ineffective assistance is raised for failing to object to the use of the jail argument, I'm sorry, evidence in the cross-examination and the direct examination of Dr. Zhu and the cross-examination of Dr. Frumkin. But I believe there was an objection to the actual statement at the time of During the closing argument? During the closing argument. Fackleman is distinguishable. Again, it is not binding on the court. Fackleman is distinguishable because there Dr. Shadeed was essentially paraded around as an expert. His credentials were presented through other witnesses. He was, well, is he, do you respect his opinion, et cetera. The other thing is Dr. Shadeed did this evaluation really for the purpose of determining whether the defendant was insane at the time of the offense because it was arranged by his lawyers and he was in fact arrested on the route to the hospital where he was going to be evaluated. So I think Fackleman is really distinguishable. Plus I think that the questions that are asked in Fackleman are more akin to the Steckley and Cleary queries and not to the Leach and the Williams queries about what evidence can be relied upon in an expert in testifying. I believe that our briefs are otherwise covering most of the issues and I will, of course, address the motion. And thank you for allowing me to do that. So if there are no other questions, I will ask that the court defer. Thank you, Mr. Arado. Mr. Maryland, will you reply? Very briefly. As to whether or not the evidence was closely balanced in this case, counsel argues that there's no nexus between his detachment from reality and shooting his son. Dr. Frumpkin provided a credible opinion that, one, he was delusional. Two, he was paranoid schizophrenic. Three, he was detached from reality at the time of the shooting. So he certainly established a nexus. He perhaps knew he was shooting his son, but because of his unrealistic belief system he was operating under at the time of the shooting, he didn't appreciate it was wrong. He had no detachment to reality, and that's the way he was processing what was happening around him. He didn't appreciate what was wrong. And that's the nexus between his paranoid schizophrenia, his delusions about his son molesting his daughter, and him believing he was being so detached from reality that he believed he needed to shoot his son for whatever reason. So the nexus was certainly established there. As to whether or not the Confrontation Clause issue, again, this court considered Steckley, considered Leach, and specifically held that Steckley provides the most rational framework for guiding a Confrontation Clause analysis. There's nothing in that opinion limiting it to expert evidence, nor medical reports or autopsy reports, nor is there any reason to. In fact, Steckley provides almost even a more difficult test to meet for determining whether or not a statement is testimonial, because not only do you consider the primary purpose, but you also consider whether or not it was a solemn statement. That goes above and beyond what Leach does. And again, as for the primary purpose, the question is what it boils down to. Is a statement made in the course of an ongoing emergency or is it made to prove a particular fact? And the diagnosis here, it was not an ongoing emergency. Tatame was in custody. He didn't present a threat to anyone. Ongoing emergency cases are those where the defendant is loose or the accused is loose and a statement is made where, you know, this person just shot me, and go get him. And the statement is to police, and that statement is for the primary purpose, where a statement is not testimonial under the primary purpose test. Certainly what's not is what's happening here. But this statement was made to establish a particular fact, and that is that Tatame did not suffer from a severe mental illness. And therefore, it was testimonial under the STECI test, under the test that this Court has adopted, and we would ask that this Court reverse based on a violation of confrontation rights. Thank you. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued in due course. And right now, we'll take a short recess for the panel.